UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| FERMIN RECARTE and DENISE RECARTE, | ) ) ) |
| Plaintiffs, | ) ) |
| -vs- | ) CASE NO. 4:24-cv-00007-JVB-JEM ) |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) |
| Defendant. | ) |

**STATE FARM FIRE AND CASUALTY COMPANY'S OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR APPOINTMENT OF INSURANCE UMPIRE**

State Farm Fire and Casualty Company ("State Farm"), by counsel, for its *Opposition to Plaintiffs' Second Motion for Appointment of Insurance Umpire* (ECF No. 35)), states:

**A. Factual Background**

1. State Farm insured Plaintiffs' residence at t 6900 N 75 E., West Lafayette, Indiana (the "Residence"), under Homeowners policy number 14-BL-M762-7 effective January 11, 2021, to January 11, 2022. ECF No. 15-1 (the "Policy").

2. The Policy includes the following Appraisal provision:

> **4. Appraisal.** If you and we fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only you or we may demand appraisal. A demand for appraisal must be in writing. You must comply with SECTION I – CONDITIONS, Your Duties After Loss before making a demand for appraisal. At least 10 days before demanding

appraisal, *the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.*

a. Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the actual cash value, replacement cost, and if applicable, the market value of each item in dispute. The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon you and us.

c. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

   (1) you or we may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the residence premises is located to select an umpire;

   *(2) the party requesting the selection described in item c.(1) must provide the other party:*

   *(a) written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and*

   *(b) a copy of the written application; and*

   (3) a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute and will be binding upon you and us. In all instances the written report of agreement will be itemized and

      state separately the actual cash value, replacement cost, and if applicable, the market value of each item in dispute.

d. To qualify as an appraiser or umpire for a loss to property described in COVERAGE A – DWELLING, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

    (1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

    (2) an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or

    (3) a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute.

e. A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

    (1) has performed services for either party with respect to the claim at issue in the appraisal; or

    (2) has a financial interest in the outcome of the claim at issue in the appraisal.

f. Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by you and us.

g. *You and we do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.*

h. Appraisal is only available to determine the amount of the loss of each item in dispute. *The appraisers and the umpire have no authority to decide:*

    (1) any other questions of fact;

    (2) questions of law;

    *(3) questions of coverage;*

    (4) other contractual issues; or

    (5) to conduct appraisal on a class-wide basis.

i. Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

j. A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

*Id*. at 33-34 (emphasis added).

3. On or about January 8, 2022, Plaintiffs claim that they sustained a water loss at the Residence. ECF No. 5 at ¶ 6 (Plaintiff's Complaint).

4. Plaintiffs did not discover the loss until on or about February 20, 2022, and did not report the loss to State Farm until February 22, 2022.

5. On October 5, 2022, Plaintiffs, via counsel, demanded appraisal and nominated Mark Ricketts as their appraiser. ECF No. 15-3 (correspondence between counsel).

6. The next day, State Farm rejected Plaintiffs' appraisal demand because Plaintiffs had not identified a contractor or produced an estimate to raise a dispute over the amount of loss; stated differently, the Appraisal demand was premature under the appraisal provision because Plaintiffs had not identified to State Farm a dispute as to the value of the loss. *Id*.

7. To date, Plaintiffs have not submitted an estimate on which they can base their Appraisal demand despite the Policy's prerequisite that Plaintiffs provide State Farm "written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed" before invoking the Appraisal provision. ECF No. 15-1 at 33 (State Farm's Opposition to First Motion to Appoint Umpire).

8. On July 27, 2023, State Farm sent Plaintiffs' counsel a denial letter denying Plaintiffs' claim for the water loss for, among other reasons, Plaintiffs' failure to maintain heat at the Residence at or above 55 degrees Fahrenheit and because damage caused by continuous and/or repeated seepage is excluded from coverage. ECF No. 15-4 (denial letter).

9. On January 18, 2024, Plaintiffs filed their *Motion for Appointment of Insurance Umpire* (the "First Motion") in the Tippecanoe County Superior Court requesting the state court appoint either Mike Abell, Vinnie Nowarita, or Jon Linville to serve as umpire. ECF No. 8.

10. On January 19, 2024, before the state court could issue an Order on the First Motion, State Farm removed this matter to this Court. ECF No. 1.

11. On February 6, 2024, State Farm filed its response to the First Motion with this Court. ECF No. 15.

12. In its Response, State Farm noted that the entire appraisal process was improper because State Farm determined that any alleged damage to Plaintiffs' residence was not covered by the applicable State Farm policy, meaning this lawsuit was nothing more than a pure coverage dispute. ECF No. 15 at ¶¶ 16-17.

13. State Farm also noted that the appraisal process was, at best, premature (if there is even coverage for the alleged damage) because Plaintiffs have failed to provide State Farm with a "written, itemized documentation of a specific dispute as to the amount of the loss" which is a mandatory condition required by the Policy in order for a party to invoke the Appraisal provision. *Id*.

14. On May 10, 2024, this Court ruled on the First Motion, ordering appraisal forward and requiring Plaintiffs to "tender their itemized documentation of what the losses are to State Farm[.]" ECF No. 27 at 2.

15. The Court also declined to select an umpire, noting Plaintiffs' request was premature because the Policy required the appraisers to select an umpire, not the parties. *Id*.

16. After the Court's Order, State Farm nominated Michael Scott to serve as its appraiser. ECF No. 37-1 at ¶ 3 (Michael Scott Affidavit).

17. On August 12, 2024, Scott and Plaintiffs' appraiser Mark Ricketts inspected the Residence. *Id* at ¶ 4.

18. Ricketts proposed six potential umpires: Matt Dugan, Martin Sheilds, Mike Abell, Vinnie Nowarita, Jon Linville, and Denny Keiser. *Id*. at ¶ 5.

19. Scott rejected all of Ricketts' proposed umpires. *Id*. at ¶ 6.

20. Scott nominated Al Kalemba, Tim Dixon, David Wenz, and Matt Holberton. *Id*. at ¶ 7.

21. On October 18, 2024, Plaintiffs filed their *Second Motion for Appointment of Insurance Umpire* (the "Second Motion") claiming the appraisers were unable to reach an agreement on the amount of loss or an umpire and requesting this Court appoint Mike Abell, Vinnie Nowarita, Jon Linville, or Denny Keiser to serve as umpire. ECF No. 35.

22. To date, neither Scott nor State Farm has received itemized documentation (such as a repair estimate) from Ricketts or Plaintiffs detailing Plaintiffs' claimed losses. ECF No. 37-1 at ¶ 8 (Michael Scott Affidavit).

**B. Legal Argument**

23. For the reasons State Farm explained in its First Motion, appraisal remains improper in this matter and should be stayed because this lawsuit is a pure coverage dispute. ECF No. 20.

24. First, State Farm has denied Plaintiffs' claim in total; State Farm does not believe there is coverage for the claimed damage to the Residence. ECF No. 15-4.

25. To that end, Appraisal provision in the Policy is clear: appraisal can be used to settle a dispute regarding the amount of loss *but it cannot be used to determine coverage for a loss*. ECF No. 15-1 at 33-34.

26. Until this Court or a jury determines that Plaintiffs' residence sustained a loss that is covered by the Policy, the Policy essentially prohibits appraisal because the appraisers are prohibited from deciding questions of coverage.[1]

27. Second, as the Court noted in its Order on the First Motion, it is unclear how there can be a dispute regarding the amount of loss when one party, State Farm, asserted there is no coverage for any aspect of the loss, and the other party, Plaintiffs, failed to provide an itemized estimate detailing the alleged scope of the loss and showing a disagreement between the parties.[2] ECF No. 27 at 2.

28. Indeed, the Court ordered Plaintiffs to produce such documentation to establish a disagreement exists and the scope of said disagreement, but to date Plaintiffs have failed to do so. *Id*.

---

[1] The parties also should not have to incur the costs of appraisal until the coverage issue is decided.

[2] As State Farm noted in its Response to the First Motion, the Appraisal provision requires an insured provide State Farm "with written, itemized documentation of a specific dispute," in order to proceed with Appraisal. Plaintiffs failure to produce such documentation at the onset of this dispute is reason enough to stay appraisal even before this Court considers Plaintiffs' ongoing failure to comply with this Court's Order to produce itemized documentation of the dispute.

29. Plaintiffs failure to provide evidence of their disagreement and the ongoing coverage dispute makes appraisal improper because the appraisal panel cannot value the damage to the residence when the scope of the loss remains in dispute.

30. If there is coverage, clarification from the Court or a jury also is necessary on the scope of that coverage in order for the appraisal panel to determine the exact damages it is meant to assess.

31. Given the uncertainty with the scope of the Appraisal panel's duty, this Court should stay Appraisal until after the coverage dispute has been resolved so that the appraisal panel can have guidance on the scope of its assessment.

32. If this Court does order appraisal to move forward, though, the Court should reject each of the umpires nominated by Plaintiffs.

33. All four umpires Plaintiffs nominated in the Second Motion were proposed by Plaintiffs' appraiser and rejected by State Farm's appraiser. ECF No. 37-1 at ¶¶ 5-6.

34. State Farm finds it vexing that Plaintiffs seek appointment of rejected umpires citing only their appointment in unrelated matters and withholding from the Court State Farm's appraiser's prior rejection of these umpires in this matter.

35. If the Court orders appraisal forward, it should appoint an umpire not previously rejected by either party.

36. To that end, State Farm nominates Michael Newman and Michael Schwartz to serve as umpire for this matter.

37. Both Newman and Schwartz are disinterested and qualified umpires as required by the Policy. ECF No. 37-2 (Newman C.V.); ECF No. 37-3 (Schwartz C.V.).

WHEREFORE, State Farm requests this Court deny Plaintiffs' Second Motion and stay the appraisal process until the scope of coverage has been determined, or in the alternative, appoints Michael Newman or Michael Schwartz as umpire.

LEWIS WAGNER, LLP

/s/ *Eric C. McNamar*
ERIC C. MCNAMAR, #22467-49
EDMUND L. ABEL, #36293-49
*Counsel for State Farm Fire and Casualty Company*

## CERTIFICATE OF SERVICE

On October 31, 2024 a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

William D. Beyers,
BUCHANAN & BRUGGENSCHMIDT, P.C.
80 E. Cedar Street
Zionsville, Indiana  46077
bbeyers@bbinlaw.com
*Attorneys for Plaintiffs*

                                          */s/ Eric C. McNamar*
                                          ERIC C. MCNAMAR

LEWIS WAGNER, LLP
1411 Roosevelt Avenue, Suite 102
Indianapolis, IN 46201
Telephone: (317) 237-0500
Facsimile: (317) 630-2790
emcnamar@lewiswagner.com
eabel@lewiswagner.com